### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| **DOROTHY DESJARDINS,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **No. 2:14-cv-350-DBH** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant** | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy.  The plaintiff argues that the administrative law judge failed to adequately consider and assess the nature and limiting effects of her chronic pain syndrome, most often diagnosed as fibromyalgia, could not validly rely on the opinions of agency nonexamining consultants, who did not see critical records, erred in assessing credibility, and improperly relied on the so-called "Grid," the Medical-Vocational Rules in Appendix 2 to 20 C.F.R. Part 404, Subpart P, to find her capable of performing other work.  *See* Plaintiff's Corrected Statement of Errors ("Statement of Errors") (ECF No. 18) at 4-24.  I agree that the administrative law judge erred in relying, for purposes of determining whether the plaintiff

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted her administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement.  Oral argument was held before me on June 10, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

had a medically determinable impairment of fibromyalgia, on the opinions of agency nonexamining consultants who did not have the benefit of review of material evidence and made a residual functional capacity ("RFC") determination unsupported by substantial evidence, undermining her reliance on the Grid.  Accordingly, I recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 31, 2009, Finding 1, Record at 16; that she had a severe impairment of degenerative disc disease, Finding 3, *id.*; that she had the RFC to perform the full range of medium work, as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), Finding 5, *id.* at 23; that, considering her age (30 years old, defined as a younger individual, on her alleged disability onset date, originally August 31, 2010, but amended to January 1, 2009), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 29; and that she, therefore, had not been disabled from January 1, 2009, through the date of the decision, April 10, 2013, Finding 11, *id.* at 30.  The Appeals Council declined to review the decision, *id.* at 6-8, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must

be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs*., 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I.   Discussion

### A.  Finding of No Medically Determinable Fibromyalgia Impairment

The administrative law judge found that the plaintiff had no medically determinable impairment of fibromyalgia, explaining:

> The [plaintiff] has alleged that she has fibromyalgia. Indeed, many treatment notes
> reveal that she carried the diagnosis at times. Social Security Ruling 12-[]2p ["SSR

12-2p"] provides that the diagnosis of fibromyalgia for the purpose of this decision requires a history of widespread pain in all four quadrants of the body; evidence that other physical or mental disorders that could cause the symptoms or signs were excluded; and either (a) at least 11 positive tender points in the left and right side and upper and lower parts of the body or (b) repeated manifestations of 6 or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome.

The record does not provide evidence that the [plaintiff] has a history of widespread pain in all four quadrants of the body for which other causes have been ruled out. It does not contain reports that 11 or more tender points were found. It does not contain evidence, objective or otherwise, of cognitive or memory difficulties or ongoing irritable bowel syndrome. Although treatment notes at times report allegations by the [plaintiff] that she felt fatigued, examining practitioners do not report that she appeared fatigued or that she awoke unrefreshed from sleep. The fact that an individual may have had six or more of the symptoms diagnostic of fibromyalgia at various times in her life, does not mean that the person has fibromyalgia. Moreover, although the [plaintiff] has alleged several other symptoms of fibromyalgia at times according to treatment notes, there is no indication that the other symptoms were not caused by other disorders.

Record at 18-19.

She stated that:

1.      Geoffrey Gratwick M.D., a consulting rheumatologist, found in 2004 and 2005 that the plaintiff did not have fibromyalgia and that her alleged symptoms might be caused by psychogenic rheumatism or somatoform disorder, finding her complaints "to be so extraordinary that even the diagnostic classification of fibromyalgia has to be stretched somewhat to encompass [her] degree of pain." *Id.* at 19 (citation and internal quotation marks omitted).

2.      Newer medical reports of record were "cumulative and reflect[ed] the presence of essentially the same facts as were documented in reports available to Dr. Gratwick." *Id.* While several treating or examining practitioners continued for some time to note a diagnosis of fibromyalgia, none reported "new evidence diagnostic of the disorder[.]" *Id.* "In fact, treatment notes by Andrew Nicholson, M.D., the [plaintiff's] primary care physician . . . from 2011 or earlier

through 2012 or later, contain no diagnosis of fibromyalgia although he did assess the [plaintiff] as having various other impairments that might cause her wide spread pain complaints, such as somatoform disorder and myalgia and myositis." *Id.* Yet, "his treatment notes contain[ed] no reports that he observed significant signs of impairment diagnostic of the disorders." *Id.* (citations omitted).

3. A treating source, Pamela LaJeunesse, A.N.P., indicated on November 6, 2009, that she doubted fibromyalgia because there were "no tender points[.]" *Id.* at 19, 211A.

4. While agency nonexamining consultant Robert Hayes, M.D., stated on October 7, 2009, that the plaintiff had primary diagnoses of pseudo-seizures and fibromyalgia and a secondary diagnosis of back reflex sympathetic dystrophy ("RSD"), he stated that the allegation of seizures was unsupported by the medical evidence of record and cited no evidence of fibromyalgia or RSD, apart from noting that one treating physician had stated that the plaintiff had a previous diagnosis of fibromyalgia and another had assessed fibromyalgia on June 26, 2009, without citing any basis for the assessment. *See id.* at 19-20. "Thus, it is unclear what impairments [Dr. Hayes] found to be medically determinable and causing the functional limitations." *Id.* at 20 (citation omitted).

5. Two other agency nonexamining consultants later found that the record contained no basis for diagnosing any impairment other than degenerative disc disease in the lumbar spine. *See id.* at 20; *see also id.* at 35-38 (opinion of Donald Trumbull, M.D., dated October 27, 2011), 46-49 (opinion of Benjamin Weinberg, M.D., dated March 22, 2012).

The administrative law judge assigned "greatest weight" to the findings of Drs. Trumbull and Weinberg that the plaintiff had no medically determinable fibromyalgia impairment, which she deemed "consistent with findings by Dr. Gratwick and with the record as a whole." *Id.* at 20.

She gave little weight to an RFC opinion of Dr. Nicholson attributing severe functional limitations to fibromyalgia because it was "inconsistent with his treatment notes[,]" which did "not contain a diagnos[is] of fibromyalgia" and did not report ongoing complaints of, among other things, tender points. *Id*. She added that his assessment was "clearly based" on the plaintiff's allegations, which she found not entirely reliable. *Id*.

The plaintiff points out, and the commissioner does not dispute, that, as the result of an error by the commissioner, Drs. Trumbull and Weinberg were not provided with materials submitted in connection with a prior application, including the Gratwick records and the Hayes RFC opinion. *See* Statement of Errors at 17 & n.18; Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors ("Opposition") (ECF No. 22) at 9 & n.9. Nor, insofar as appears, did Dr. Hayes have the benefit of review of the Gratwick records. *See* Record at 1146.

The administrative law judge concluded that this was immaterial because findings in those records, including Dr. Gratwick's findings, were consistent with those in records available to the agency nonexamining consultants. *See id*. at 19. Yet, as the plaintiff suggests, *see* Statement of Errors at 17-21, that conclusion is not supportable.

The plaintiff's then-primary care physician, Elisa Thompson, M.D., referred her to Dr. Gratwick in 2004 for evaluation of her complaints of widespread pain. *See* Record at 633. In her referral letter, Dr. Thompson explained that results of TSH, CRP, rheumatoid factor, and SED rate tests had been normal, and an ANA test had been only mildly remarkable. *See id*. at 868. She stated that she had broached the topic of fibromyalgia with the plaintiff; "however, when resorting to a diagnosis of exclusion such as this, my preference is to offer the patient rheumatological referral for further evaluation." *Id*.

On examination on October 29, 2004, Dr. Gratwick found the plaintiff "diffusely tender at all ACR [American College of Rheumatology] control plus trigger points using a dolorimeter." *Id.* at 633.  Under the heading, "Impression," he stated:

> Diffuse pain.  The [plaintiff] herself globally is so uncomfortable that even the diagnostic classification of fibromyalgia has to be stretched somewhat to encompass this degree of pain.  Whether or not this is better termed "psychogenic rheumatism" or somatoform disorder is uncertain.  I see no evidence of other underlying disease processes such as inflammatory disease or postinfection process (HVC, Lyme, B19) or an endocrinopathy.  Sarcoid does not usually look like this.

*Id*. at 634.  He added, "For the sake of allowing her to get on with her life, it seems to me that the diagnosis of fibromyalgia is appropriate."  *Id*.

By letter dated August 31, 2005, Dr. Thompson again referred the plaintiff to Dr. Gratwick, noting that her efforts to wean her from narcotics had failed, she would like an opinion on whether there was a role for a pain specialist in the plaintiff's care, and she would like Dr. Gratwick to reiterate, as he had on October 29, 2004, the importance of an exercise regimen, a restorative sleep pattern, and the cessation of narcotic medication.  *See id*. at 856-57.

Dr. Gratwick examined the plaintiff again on October 18, 2005, finding "widespread diffuse tenderness using a dolorimeter at both trigger and control points (even her palms are tender at 1.0 kg. – highly improbable if not impossible)."  *Id*. at 635.  Under the heading, "Impression," he stated:

> Diffuse pain.  Ongoing.  As before, my suspicion is that this represents a somatoform disorder.  Unfortunately, treatment is extraordinarily difficult if not impossible.  The literature (and my experience) would indicate that ongoing basic support is probably going to be the most helpful of all.  An attentive, sympathetic and appreciative listening ear is important.  Given the complex nature of somatoform disorders, there is probably no one pharmacologic intervention that will be ultimately satisfactory.

*Id*.  Dr. Gratwick wrote Dr. Thompson:

>Unfortunately, I am afraid I have very little wisdom in a situation that is as difficult as the one [the plaintiff] presents.  I think that a diagnosis of somatoform disorder is appropriate.  Unfortunately, as I suspect you are aware, treatment is exceedingly difficult in instances such as this.  I do not doubt at all that her discomfort is very "real" but I have significant doubts as to whether or not she is going to find any meaningful/safe pharmacologic treatment for her problem.  I worry that if she goes to pain clinics, etc. she will simply be given more medications.

>My basic perspective is that she might do well with some local trigger point injections. . . .

*Id.* at 631.

Dr. Thompson continued to diagnose the plaintiff with fibromyalgia, although seemingly with no independent confirmation of that diagnosis.  *See, e.g., id*. at 846-49.

As the commissioner points out, *see* Opposition at 4-5, one can fairly read Dr. Gratwick's records as expressing doubt about a fibromyalgia diagnosis.  Yet, he was comfortable assessing the plaintiff with fibromyalgia on October 29, 2004, and his findings appear consistent with those that, according to SSR 12-2p, establish a medically determinable impairment of fibromyalgia pursuant to the 1990 ACR Criteria for Classification of Fibromyalgia: "[a] history of widespread pain[,]" "[a]t least 11 positive tender points on physical examination[,]" and "[e]vidence that other disorders that could cause the symptoms or signs were excluded[,]" SSR 12-2p, reprinted in *West's Social Security Reporting Service* Ruling 1983-1991 (Supp. 2014), at 462-63; *see also* Record at 633.

At oral argument, counsel for the commissioner contended that Dr. Gratwick's findings do not establish a medically determinable impairment of fibromyalgia pursuant to SSR 12-2p because he did not rule out other causes.  However, Dr. Gratwick did note and rule several other possible causes.  *See* Record at 634.  While he did not exclude somatoform disorder and, in fact, later embraced it, it seems significant, as the plaintiff observes, that agency nonexamining mental health

consultants ruled out the establishment of somatoform disorder as a medically determinable impairment. *See* Statement of Errors at 6; Record at 21-22, 35, 46.[2]

Beyond this, as the plaintiff points out, *see* Statement of Errors at 7-8, 12-13 & nn. 9, 14, it is troubling that Drs. Hayes, Trumbull, and Weinberg never had the benefit of review of records of another treating source, Stephen Z. Hull, M.D., of Mercy Medical Pain Management, who noted on August 16, 2010, "Fibromyalgia, rheumatologic confirmation in 2004 (Bangor), clinical examination consistent with this[,]" Record at 252; *see also id.* at 32-33, 45, 1146 (Hull records not among those summarized by Drs. Trumbull, Weinberg, and Hayes), or a February 25, 2013, RFC questionnaire in which Dr. Nicholson described his clinical findings as "tenderness at trigger points and history consistent with fibromyalgia" and checked the box, "Yes," in answer to the question, "Does your patient meet the American College of Rheumatology criteria for fibromyalgia?[,]" *id.* at 654.

Drs. Trumbull and Weinberg indicated that they found no medically determinable impairment of fibromyalgia because of a lack of "ACR confirmation[.]"  *Id.* at 36, 47.  In turn, they found "little objective support" for the plaintiff's "extensive symptomatology[.]"  *Id.*  "One cannot be confident that, had Drs. [Trumbull and Weinberg] seen the [Gratwick and Hull evidence and the Nicholson opinion], they would have continued to [find no medically determinable

---

[2] The plaintiff relies on an unpublished opinion of this court, *Moore v. Astrue*, No. 2:09-cv-297-GZS, slip op. at 6-7 (D. Me. Dec. 31, 2012) (rec. dec., *aff'd* Jan. 28, 2013), for the proposition that a claimant is not obligated to prove that she has a particular diagnosis, but must only prove that she has a medically determinable condition that imposes limitations on her ability to work.  *See* Statement of Errors at 5.  However, *Moore* was not a fibromyalgia case.  *See Moore*, slip op. at 3.  In SSR 12-2p, which became effective on July 25, 2012, the commissioner specifically addressed what must be shown to establish a medically determinable impairment of fibromyalgia, stating that she will not "rely upon the physician's diagnosis alone[,]" that there must be evidence that the condition meets either the 1990 ACR Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria, and that the physician's diagnosis is not inconsistent with the other evidence in the person's case record.  *See* SSR 12-2p at 460-62.

fibromyalgia impairment and assessed the same RFC].” *Brown v. Barnhart*, No. 06-22-B-W, 2006 WL 3519308, at *3 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 28, 2006).[3]

In short, in finding that the plaintiff suffered from no medically determinable fibromyalgia impairment, the administrative law judge placed heavy reliance on the opinions of agency nonexamining consultants who had not had the benefit of review of record evidence that, at the least, raises doubt as to their conclusion. In such circumstances, the opinions of nonexamining consultants cannot stand as substantial evidence. *See, e.g.*, *Rose v. Shalala,* 34 F.3d 13, 18 (1st Cir. 1994) (“[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.”) (citations and internal quotation marks omitted); *Brackett v. Astrue,* No. 2:10-cv-24-DBH, 2010 WL 5467254, at *5 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011) (“[T]here is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC,” although “[f]actors to be considered include the completeness of the consultant's review of the full record and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the administrative law judge.”) (citations omitted).

---

[3] The commissioner contended, through counsel at oral argument and in her brief, that even if Drs. Trumbull and Weinberg had seen the Gratwick and Hull records and the Nicholson opinion and had been persuaded that the plaintiff's fibromyalgia was a medically determinable impairment, they probably would not have altered their RFC opinions. *See, e.g.,* Opposition at 12. Her counsel posited that Dr. Hull's records are consistent with the findings of Drs. Trumbull and Weinberg in that Dr. Hull stated that 90 percent of the plaintiff's problem was her degenerative disc disease. *See* Record at 251; *see also* Opposition at 12. Yet, there is contrary evidence that Drs. Trumbull and Weinberg also did not see, including the Nicholson RFC opinion. As discussed below, the administrative law judge offered no valid rationale for discounting that opinion.

For the reasons discussed below, the error was not harmless.

## B.  RFC Determination

At Step 4, the administrative law judge rejected the RFC opinions of all three agency nonexamining consultants (Drs. Hayes, Trumbull, and Weinberg), stating that they were "inconsistent with the record as a whole" because, "[a]though they essentially found that the medical record did not support the [plaintiff's] allegations, they [nevertheless] found that he was limited [to] light work with minor postural limitations."  Record at 28.  She indicated that even the diagnosis of degenerative disease was unfounded, stating:

> Despite the absence of a definitive diagnosis of the [plaintiff's] back pain (Dr. Nicholson continues to diagnos[e] it as lumbago, a term indicating that the pain was not caused by degenerative disc disease), [Drs. Trumbull and Weinberg] diagnosed degenerative disc disease but no other impairment.  The opinion by Dr. Hayes that the [plaintiff] did not have severe degenerative disc disease supports a finding that the medical evidence of record did not necessarily lead to a conclusion that degenerative disc disease caused any limitations as later evidence is essentially cumulative.

*Id*. (citations omitted).  She concluded:

> The undersigned infers that the State experts were merely giving the [plaintiff] the benefit of any doubt, failing to see all the reports cited above of symptom magnification and drug seeking behavior.  Based on the great number of such reports the undersigned is unwilling to look as favorably on the very slim evidence that the [plaintiff] has any functional limitations due to degenerative disc disease in the lumbosacral spine.  However, to give the [plaintiff] the benefit of the doubt to the greatest extent possible given the record as a whole, the undersigned finds that [she] is able to do the full range of medium level work without any restriction.

*Id*.[4]

---

[4] As part of her credibility determination, the administrative law judge discussed in detail why she viewed the plaintiff's allegations as "wild exaggerations[,]" Record at 25, observing, for example, that Dr. Thompson had indicated that the plaintiff had been noncompliant and had not extended "true effort" during strength testing and that she suspected malingering, another treating source expressed concern that the plaintiff's behavior was inconsistent with her alleged "excruciating" pain, a consulting physician found evidence of possible symptom magnification, and the plaintiff had exhibited drug-seeking behavior and/or noncompliance with drug-usage monitoring protocols that caused several treating sources, including Drs. Thompson and Hull, to discontinue her narcotic medications or discharge her from their care, *id*. at 25-26.

The plaintiff persuasively argues, *see* Statement of Errors at 14-17, that the administrative law judge was out of her depth in doing so.  As this court has observed:

> The ALJ's [administrative law judge's] findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. With a few exceptions . . ., an ALJ, as a lay person, is not qualified to interpret raw data in a medical record.  In particular, an ALJ ordinarily needs an expert's opinion when it comes to translating raw medical records into a residual functional capacity finding, unless, as is seldom the case, the record permits a commonsense judgment about functional capacity that would be apparent even to a layperson.

*Anglen v. Social Sec. Admin. Comm'r*, No. 1:13-cv-00167-NT, 2014 WL 1780436, at *4 (D. Me. May 5, 2014) (citations and internal quotation marks omitted).

The commissioner contests that there was any error, asserting that the administrative law judge did not assess RFC from the raw medical evidence but, rather, supportably concluded that the plaintiff had no restrictions, assigning a limitation to medium work solely to give her the benefit of the doubt.  *See* Opposition at 18-19 (citing, *inter alia*, *Bowden v. Colvin*, No. 1:13-CV-201-GZS, 2014 WL 1664961, at *3 (D. Me. Apr. 25, 2014), for the proposition that an administrative law judge "may assess an RFC without relying on a medical opinion where the medical evidence shows relatively little physical impairment") (citation and internal quotation marks omitted).

Yet, the administrative law judge's conclusion that Drs. Trumbull and Weinberg found a medically determinable back impairment, for which they assessed limitations, solely because they gave the plaintiff the benefit of the doubt is unsupported by substantial evidence.  Both consultants indicated without equivocation that the plaintiff had a severe medically determinable impairment of degenerative disc disease that could cause the alleged symptoms, and neither stated that he assessed limitations merely as the result of giving the plaintiff the benefit of the doubt.  *See id*. at 35-38, 46-49.  Rather, both deemed her "partially credible."  *Id*. at 36, 47.

12

To the extent that the administrative law judge dismissed the Trumbull and Weinberg RFC opinions because they did not have the benefit of review of evidence that, in her view, called into question the credibility of the entirety of the plaintiff's complaints, this underscored the key problem in this case: that the agency nonexamining consultants did not have the benefit of review of all material evidence of record.  This is particularly problematic here, where the administrative law judge concluded that the plaintiff was malingering.  *See id.* at 25; *Ormon v. Astrue*, 497 Fed. Appx. 81, 86 (1st Cir. 2012) (administrative law judge, as a layperson, was not qualified to determine that claimant with back injury was malingering when no doctor determined that he was).[5]

The commissioner argues, in the alternative, that any error was harmless because, even had the administrative law judge adopted the Trumbull and Weinberg RFC opinions, the plaintiff still would not have been found disabled pursuant to the Grid.  *See* Opposition at 19 & n.11.

This argument implicates an exception to the rule of *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), pursuant to which "a reviewing court cannot affirm an agency's decision on the basis of a *post hoc* rationalization but must affirm, if at all, on the basis of a rationale actually articulated by the agency decision-maker."  *Day v. Astrue*, No. 1:12-cv-141-DBH, 2012 WL 6913439, at *10 (D. Me. Dec. 30, 2012) (rec. dec., *aff'd*, Jan. 18, 2013) (citation and internal quotation marks omitted).  The exception applies "when a remand will amount to no more than an empty exercise because, for example, application of the correct legal standard could lead to only one conclusion."  *Id.* (citation and internal punctuation omitted).

---

[5] The commissioner seeks to distinguish *Ormon* on the basis that in this case a treating physician, Dr. Thompson, did suspect malingering.  *See* Opposition at 17.  As noted above, Dr. Thompson did state that she suspected some malingering with respect to the plaintiff's complaints of weakness given her seeming lack of effort during strength testing.  *See* Record at 863.  However, Dr. Thompson did not indicate that she suspected malingering as to the plaintiff's "[p]robable fibromyalgia[.]"  *Id.*  Beyond this, the evidence as a whole is sufficiently voluminous and complex to require review by a medical expert as to the question of malingering.

At oral argument, the plaintiff's counsel conceded that, if the Trumbull and Weinberg RFC opinions were adopted, the Grid would have still directed a conclusion that his client was not disabled. Yet, he persuasively argued that, in the circumstances of this case, those opinions cannot stand as substantial evidence of the plaintiff's RFC. First, as discussed above, Drs. Trumbull and Weinberg did not have the benefit of review of material evidence bearing on the diagnosis of, nature, and extent of the plaintiff's asserted fibromyalgia impairment.

Second, the validity of the administrative law judge's rejection of the Nicholson RFC opinion hinges on the supportability of her finding that the plaintiff had no medically determinable fibromyalgia impairment. The administrative law judge stated that she gave the Nicholson opinion little weight because it was inconsistent with his treatment notes, which contained no diagnosis of fibromyalgia and did not reflect ongoing complaints of certain symptoms, including tender points, and because his assessment was "clearly based on the [plaintiff's] allegations[.]" Record at 20. Yet, in July 2011, Dr. Nicholson did note "diffuse muscle tenderness" and "symptom complex of fibromyalgia more than RSD." Record at 501. In addition, as the plaintiff points out, *see* Statement of Errors at 14, a treating physician's reliance on a claimant's allegations is not a valid basis on which to reject an RFC opinion predicated on a diagnosis of fibromyalgia, *see, e.g., Johnson v. Astrue*, 597 F.3d 409, 412 (1st Cir. 2009) ("[A] patient's report of complaints, or history, is an essential diagnostic tool in fibromyalgia cases, and a treating physician's reliance on such complaints hardly undermines his opinion as to the patient's functional limitations.") (citation and internal punctuation omitted).

The administrative law judge, accordingly, failed to supply the requisite "good reasons" for rejecting a treating source medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)

("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion.").

The error was not harmless.  As the plaintiff observes, *see* Statement of Errors at 13, Dr. Nicholson limited her to less than sedentary work (lifting 10 pounds, standing/walking for less than two hours in an eight-hour day, sitting for about four hours in an eight-hour day, and only limited reaching, handling, and fingering) and indicated that he would expect her to miss more than four days a month from work, *see* Record at 656-58.  The plaintiff asserts, and the commissioner does not contest, that adoption of the limitations assessed by Dr. Nicholson would have precluded reliance on the Grid.  *See* Statement of Errors at 24; Opposition at 20.

Remand is warranted to obtain medical expert assistance as to the plaintiff's medically determinable impairments and her RFC based on the record evidence as a whole, following which a fresh credibility analysis and weighing of opinion evidence, including the opinion of Dr. Nicholson, should be undertaken.[6]

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14)*

---

[6] The administrative law judge discredited essentially all of the plaintiff's claimed symptoms and limitations on the basis that she had wildly exaggerated them.  *See* Record at 25, 28.  However, because the "primary symptom" of fibromyalgia "is chronic widespread pain," *Johnson*, 597 F.3d at 414, the administrative law judge's error in analyzing whether the plaintiff had a medically determinable fibromyalgia impairment calls into question her credibility determination, as well.

**days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.**

**Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.**

Dated this 1st day of July, 2015.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge